UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

ARTHUR D'AMARIO III

v.

MARK E. STURDY;

KYLE P. HEAGNEY

## VERIFIED COMPLAINT

1. This is a civil action for declaratory and injunctive relief brought under authority of Rules 57 and 65, 42 USC 1983, and with jurisdiction and venue properly based pursuant to 28 USC Sections 1343(a)(4) and 1391(b)(1).

2. Plaintiff is a citizen and resident of Rhode Island.

3. Defendant Sturdy is Clerk-Magistrate of MA District Court at Attleboro.

4. Defendant Heagney is chief of Attleboro Police Dept.

5. Defendants are MA residents and their conduct described below was carried out under color of state law, causing Plaintiff to be deprived of rights and privileges secured by U.S. law. Defendants are sued in their official capacities for equitable relief.

### Statement of Claim

6. On Oct. 17, 1997, a female acquaintance of Plaintiff, Debra Ann Sellers of Attleboro, decided to resolve a minor, trivial dispute with him by having Plaintiff repeatedly arrested and jailed. She filed in Sturdy's court for a no-contact order under MGL c. 209A, section 1, in a case that became captioned as *Sellers v. D'Amario,* No. 9734 RO 0720. The court would enter final, appealable judgments against Plaintiff on or about 10/21/97, Oct. 1998, and 2/4/99.

7. For every judgment, Plaintiff timely filed Notices of Appeal, had all filing and docketing fees waived, and had every trial court hearing transcribed. However, no direct appeal was ever docketed or heard by MA Appeals Court, which declined to give Plaintiff an explanation.

8. On 11/5/98, Sellers had Plaintiff arrested in Attleboro on two misdemeanor "contact violation" complaints brought by Heagney, captioned *Com. v. D'Amario,* Nos. 9834 CR 3500 & 3629. Bail was set at an all-time record for an American court, at $25,000 cash-only, even though Plaintiff was indigent with no more than $1,000. In setting record-high bail, Judge Phillips relied on lies from Markey that Plaintiff had been "continuously harassing Mrs. Sellers with nightly unwanted phone calls." Not even one such call had occurred.

9. During incarceration, Heagney and state officials acting in concert with him, including Attleboro prosecutor Christopher M. Markey, secretly telephoned Sheriff Thomas Hodgson to direct that Plaintiff be singled out for abuse and harassment while detained. Despite having $300 cash in his inmate account from 11/5/98 to 12/11/98, Hodgson refused to let Plaintiff purchase Canteen items. He was unable to wash, shampoo, comb his hair, use soap, shave his face, brush his teeth, write letters or use the mails.

10. On or about 12/11/98, due to the harassment endured in jail and its adverse effect on his personal appearance and mental state, Plaintiff was coerced into a nolo plea by Heagney and Markey, sentenced to time-served, and released on probation.

11. Within days, Plaintiff timely and properly filed a Notice of Appeal from the criminal judgments and obtained transcripts and waiver of fees due to indigency. However, the MA Appeals Court declined to assign counsel or to even provide Plaintiff an appellate docket number, and his direct appeals were never heard. At the coerced plea hearing, Plaintiff admitted to mail service of copies of court pleadings permitted by M.R.Civ.P. 5 and by c. 209A. On appeal, he could have gotten the judgment of conviction vacated because the facts did not establish a crime, there was no jurisdiction over him or the subject matter (making the order void), and his trial court counsel was inept.

12. On 11/3/98, Sturdy had maliciously handpicked for Plaintiff's criminal defense attorney David G. DiCola of Providence, who had a reputation as the worst lawyer in MA. A year later, Plaintiff discovered that DiCola had been expunged from the lists of court-appointed lawyers by the Chief Judges of the RI state courts due to lack of ability to defend misdemeanor cases and told by Chief Judge DeRobbio to get out of the legal profession. DiCola failed to defend Plaintiff and pressed for a nolo plea because he could not perform in front of a jury and was scared of losing his MA practice.

13. Upon applying for her no-contact order 10/17/21, Sellers, her ex-husband Matthew and her best friend, Natalia Mendes of Taunton, boasted to Plaintiff's family that they had "powerful friends" in the MA District Court who were going to "take care of" Plaintiff. DiCola told Plaintiff's RI girlfriend, Susan T. Petit, on 11/13/98, that Judge Gregory L. Phillips, who set the $25,000 cash bail, had been externally "influenced" by Sellers' wealthy, politically-connected family.

14. At no time did Sellers ever allege or prove any domestic "abuse" by Plaintiff. Instead, she admitted in her pro se pleadings and testimony that no abuse ever occurred. Sellers conceded that the parties never had a "substantive dating relationship" to satisfy the jurisdictional requirement. Nevertheless, every judge labeled her an "abuse victim" after each sham hearing.

15. At no time did Sellers or Markey present any jurisdictional facts. In Oct. 1997 Plaintiff timely filed a motion to dismiss 9734 RO 0720 under M.R.Civ.P 12(b)(2), but was not granted a sham hearing on it until 2/4/99. On that date, Judge Joseph I. Macy shifted the burden to show or

refute personal jurisdiction from Sellers to the defending party, then denied the motion on the canard that MA had jurisdiction over Plaintiff because he'd come into MA to argue his motion.

16. During the pendency of Sellers' civil action, Defendants constantly strived to provide her fake case a continuous advantage. They did so by denying Plaintiff hearings on factual issues, reversing standard procedure to trip him up, tampering with and altering paper court files, making Plaintiff wait in the courtroom as long as 8 hours for his case to be called, refusing to transmit the case files up to the Appeals Court, by confronting, threatening and bullying Plaintiff in RI, and by committing an atrocious crime that has permanently obstructed justice.

17. On 2/4/99, in 9734 RO 0720, Judge Macy heard Sellers' request to extend her no-contact order. Subjected to Plaintiff's cross-examination for the first time, Sellers testified before Macy and Lt. George Bussiere of Attleboro Police Dept. that Plaintiff had never telephoned her in 1999, 1998 or 1997, and added that Markey had made "false statements" to Judge Phillips on 11/5/98 and 11/13/98 to effect Plaintiff's wrongful detention. Sellers also testified that she "never really needed a restraining order," but Judge Macy extended it anyway to rescue Lt. Bussiere from the prospect of heavy civil liability.

18. Judge Macy knew on 2/4/99 that these Defendants had set up a sting to put Plaintiff right back into the brutal detention conditions of Markey's and Hodgson's jails. Sellers testified that she had been receiving anonymous, crank greeting cards with RI postcards, so Macy pretended to believe the sender was Plaintiff as a means to extend her order. The anonymous letters had been mailed to Sellers from RI soil by Lt. Bussiere and Sgt. Kenneth D. Collins of Attleboro Police Dept., for the illegitimate purpose of defeating Plaintiff's jurisdictional defense and having him falsely arrested again.

19. On 2/26/99, an FBI document examiner reported that the anonymous letters did not come from Plaintiff's typewriter and that the sender deposited his DNA on them, which Defendants have refused to have analyzed by an expert for a quarter century, nor will they produce copies or have the letters tested for fingerprints.

20. Immediately after the 2/4/99 sham hearing, at about 5:30 p.m. when the courthouse was empty, Judge Macy met alone with Lt. Bussiere. They played back the original cassette tape and erased all exculpatory portions, including instances of obvious perjury by Sellers, her admission that Plaintiff had never phoned her and that Markey lied to the court, and Macy's odd jurisdictional ruling that Plaintiff waived the defense by showing up to argue it. Sturdy then gave Plaintiff a supposedly true copy of the cassette for appeal. When it was transcribed in 2001, Plaintiff realized it was an altered, defective fake. He has now found a retired FBI audio expert who can scientifically conclude for this court that the cassette is not a complete copy.

21. As a result, Plaintiff cannot ever get a fair opportunity for justice in the MA courts on any Sellers-related case, because his best evidence was maliciously destroyed by judicial personnel to favor the state and the wealthy Sellers family. He has been structurally blacklisted in the MA courts.

22. On 2/8/99, Collins and Bussiere lied under oath in RI 6th Division District Court that Plaintiff was the author of the anonymous letters and was harassing Sellers with phone calls. Obtaining a search warrant by deception, they then forced entry into Plaintiff's RI home, did a general rummaging, stole and later destroyed his personal property, and falsified their records related to the search. In so doing, MA police achieved their objective of sabotaging Plaintiff's RI state probation, causing him to be incarcerated from 2/19/99 to 12/23/14.

23. During those 16 years, Plaintiff was separated from his MA court records and repeatedly wrote to the Appeals Court for assigned counsel, docket numbers and direct review of 9734 RO 0720 and 9834 CR 3500 & 3629. At no time did he have access to MA court rules or MA statutes, and he was homeless and penniless with no means to obtain counsel. The Court ignored him and never heard the cases. To date, Plaintiff remains the only losing litigant in the history of the MA courts to properly exercise his statutory right of review and not be allowed an appeal.

24. On or about August 1998, Collins and Bussiere lied in police complaints that Plaintiff had entered MA 8/8/98 and 8/15/98, contacted Sellers at her home, then "fled the jurisdiction" to become a "fugitive." They petitioned the RI Governor for extradition, which was granted and lied to the Gov. Almond that the pending charges were felonies, when they were misdemeanors. The false "fugitive" label led to the $25,000 cash-only bail of 11/5/98, and resulted in a 9/3/98 Providence Journal article planted by Heagney which humiliated Plaintiff as a domestic abuser, wanted criminal and fugitive from justice. This frame-up was orchestrated by Heagney's police department as a plot to injure Plaintiff in retaliation for his participation in an official proceeding, *D'Amario v. DuFort et al.*, C.A. No. 98-cv-11331-MEL (D.Mass.).

25. On or about 2012, Lt. Herrera of FCI Victorville II told Plaintiff that an Attleboro Police officer had made an angry phone call to SIS in the hope of getting him confined to the BOP's SHU. A week later, Lt. Herrera told Plaintiff SIS had determined Plaintiff did nothing wrong. Thereafter, the BOP refused to release its records of the incident under the Freedom of Information Act.

26. On 10/5/12, 5/5/14 and 9/9/23, Plaintiff submitted to Sturdy by mail three postconviction petitions under authority of M.R.Crim.P. 30 and MGL c. 278, section 3. All three pleadings were destroyed by Defendants to prevent the possibility of a court-ordered DNA/fingerprint examination of the anonymous letters and inquiry into the altered cassette of 2/4/99.

27. In September 2023, Plaintiff discovered that an arrest warrant was issued for him by these Defendants in 2014, apparently under c. 265, section 43A. He has mailed in motions for assigned counsel and a finding of indigency, but those pleadings have apparently been discarded by Sturdy, along with Plaintiff's letter to the First Judge asking for counsel.

28. Through 2014, Plaintiff was incarcerated in Arizona and, as usual, had no contacts with MA. Between 2012 and 2014, Plaintiff, from a prison in CA or AZ, wrote a polite letter to Mendes describing how police wrote the anonymous letters to Sellers on 10/29/98 and 1/14/99 to frame Plaintiff in retaliation for having filed 98-cv-11331-MEL, and asking her to be a voluntarily witness in postconviction litigation. Should that letter be the basis of the pending warrant in

*Com. v. D'Amario,* No. 1498 CR 3305, it does not confer jurisdiction in MA, it is not criminal, it is immunized speech and it is privileged work-product of a *pro se.* The pending complaint is the most frivolous of them all and puts Plaintiff at risk of apprehension and detention every day. He cannot be treated fairly in a MA court nor can he defend because of case-file tampering and cassette erasures by Sturdy and Macy. The conduct of Defendants from 1997-2024 is described by the RI ACLU as an "organized circus" against Plaintiff and violates his rights under the First, Fourth and Fourteenth Amendments. Pendency of the frivolous warrant is a seizure lacking probable cause that inhibits Plaintiff's movements and subjects him to fear. A pattern has emerged showing Defendants consistently try to stifle Plaintiff's verbal complaints about them and Sellers by piling on meritless criminal charges to silence him.

29. Plaintiff has obtained DNA/fingerprint samples from Bussiere and Sellers, and his own DNA is in CODIS. Such forensic testing will prove that Bussiere, Collins, and Sellers wrote the anonymous letters to sabotage Plaintiff's RI and MA probations, with secretive assistance from a RI State Police Detective who is another law enforcement friend of the Sellers family.

WHEREFORE, Plaintiff requests Judgment as follows:
a. That the court temporarily and permanently restrain defendants and their agents from acting on the invalid arrest warrant, 1498 CR 3305, and from continuing to exercise jurisdiction over Plaintiff in the absence of subject-matter and personal jurisdiction;
b. That the court order Defendants to arrange for impartial, expert testing of the DNA and fingerprints on the anonymous letters for comparison to the DNA/fingerprints of Sellers, Bussiere and Plaintiff;
c. That the court order Defendant Sturdy to vacate and expunge the appealed, unheard civil and criminal judgments entered against Plaintiff from Oct. 1997 through Feb. 1999;
d. That the court appoint Plaintiff's FBI acoustics expert to examine his 2/4/99 cassette copy for tampering, erasure and alteration by Defendants;
e. For his costs of suit incurred, fees and any attorney or expert witness expenses;
f. For such other and further relief as the court may deem meet and just.

I declare under penalty of perjury that the foregoing is true.

*[signature]*

Executed on: April 30, 2024

PLAINTIFF, PRO SE

Arthur D'Amario III

15 Walter Drive, Apt. T

North Kingstown, RI 02852

(401) 437-7088